**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **DAWN ADAMS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Case No. 5:21-cv-874** |
| **V.** | § | |
| | § | |
| **1500 BARTON SPRINGS, INC., D/B/A** | § | |
| **CRESTVIEW RV CENTER, CRESTVIEW** | § | |
| **RV SAN ANTONIO, INC., ADP** | § | |
| **TOTALSOURCE, INC., & SCOTT SPEARING** | § | |
| | § | |
| *Defendants.* | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

Plaintiff Dawn Adams ("Adams" or "Plaintiff") files this Original Complaint against Defendants 1500 Barton Springs, Inc., d/b/a Crestview RV Center & Crestview RV San Antonio, Inc. (collectively, "Crestview RV"), ADP TotalSource, Inc. ("ADP"), and Scott Spearing and would show as follows:

<u>**A. Parties**</u>

1.      Plaintiff Dawn Adams brings this action individually. Plaintiff resides in Guadalupe County, Texas.

2.      Defendant 1500 Barton Springs, Inc., d/b/a Crestview RV Center is a Texas corporation and may be served through its registered agent for service of process, Scott S. Lougheed, at 15700 IH-35, Buda, Texas 78610.

3.      Defendant Crestview RV San Antonio, Inc. is a Texas corporation and may be served through its registered agent for service of process, Scott S. Lougheed, at 15700 IH-35, Buda, Texas 78610.

4.      Defendant ADP TotalSource, Inc., is a Florida corporation and may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

5.      Scott Spearing is President of Crestview RV and may be served at his regular place of business, 16473 IH 35 North, Selma, Texas 78154. Spearing has the authority to hire and fire, to set the terms and conditions of employment, to control employment files, to set pay practices, and to make other fundamental employment decisions for Crestview RV.

## B. Jurisdiction and Venue

6.      This case is brought under the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12112, *et seq.*; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and the Texas Commission on Human Rights Act, Section 21.051, *et seq.*, of the Texas Labor Code ("TCHRA").

7.      This Court has jurisdiction over this matter according to 28 U.S.C. § 1331; 29 U.S.C. § 2601; and 42 U.S.C. § 12112.

8.      This Court has supplemental jurisdiction over Plaintiff's state law claims of a violation of TCHRA by virtue of 28 U.S.C. § 1367.

9.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## C. Exhaustion of Administrative Remedies

10.      Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and failure to accommodate against Crestview RV.

11.    Plaintiff files this Original Complaint within 90 days after receiving the notice of the right to sue from the EEOC.

### D. Facts

12.    Crestview RV is a retail RV dealership serving recreational vehicle owners seeking sales, parts, service, and financing.

13.    ADP TotalSource is a Professional Employer Organization that Crestview RV hired to administer payroll, provide applicable employee benefits and assist with human resources and risk management. ADP TotalSource represents itself to Crestview RV employees as their "co-employer for certain employment responsibilities."

14.    Dawn Adams was hired as a sales associate for Crestview RV in 2013, first in the Buda location and then since 2019 in Selma. She was extremely successful at her job.

15.    Adams was hospitalized on or about September 14, 2019 following an ischemic stroke. Adams applied for a Family and Medical Leave Act leave of absence through ADP TotalSource. ADP TotalSource approved the FMLA leave on October 16, 2019 retroactive to her initial absence. On or around that same day, Adams's physician released her to return to work on a part-time basis, four hours per day.

16.    Adam's physician reported to Crestview RV and ADP TotalSource that she was approved to return to work on October 20, 2019 for four hours per day, five days per week, with the expectation that this parttime schedule would continue until November 2019. Adam's physician reported this information on the required FMLA documentation.

17.    The same day that ADP TotalSource approved Adams's FMLA leave, October 16, 2019, ADP employee Angel Meza wrote to Spearing, "We are contacting you in regards to your employee, Dawn Adams. We have received her medical certification stating to be on a reduced

schedule: 4 hours per day; 5 days per week from 10/20/19 through 11/20/2019. **Are you going to be able to accommodate employee with such restrictions?** If you are unable to accommodate restrictions, then the employee with remain out on a continuous block leave and the medical certification will be good to support her leave until 11/20/2019." (emphasis in original).

18.     Nowhere in this communication does ADP TotalSource comply with its obligations as a co-employer to provide guidance to Crestview RV on its FMLA or ADA obligations. ADP TotalSource did not explain to Crestview RV what reasonable accommodation process Adams was entitled to, or Adams's fundamental right to intermittent leave under the FMLA. ADP TotalSource failed in its legal obligation to protect Adams's rights at work.

19.     ADP TotalSource ignores the promise it made to Crestview RV employees in its employee handbook's FMLA policy: "employees also are entitled to take leave intermittently or on a reduced eave schedule when medically necessary due to a serious health condition of the employee . . . ."

20.     In response to Adams's request to return to work four hours per day, five days per week, her supervisor, Steve Spearing, wrote in an email on October 18, 2019: "I regret so much your struggles and challenges. As much as we are concerned and want to help, *we just don't have anything that can fill that request*. As you know- your position is a very demanding one mentally and physically. Additionally, we are headed into the slow season. ***Keep working for A full recovery and we are here when you can return full time***." (Emphasis added).

21.     Mr. Spearing never explained to Adams how permitting her to return to work part time would be an undue burden on the company. Importantly, Adams earned all of her income on draw and commission, so permitting her to return on a part-time basis would not cost the company any money.

PLAINTIFF'S ORIGINAL COMPLAINT                                                          4

22.     Mr. Spearing did attempt to explain to the EEOC, however, how permitting Adams to work fulltime would pose an undue burden. He drafted and signed a multiple page diatribe against the fundamental underpinnings of the ADA, from comparing Crestview RV to Home Depot to claiming that all salespeople are expected to be at the store at least 54 hours per week without exception. He stated, "To allow one to come in and have the schedule to work part time is not fair. If done, it would create discourse [sic], dissatisfaction, anger, jealously and resentment toward the company and the part time employee. **These normal reactions would create terrible attitudes, bad feelings, and anger against the management of the organization. This would pose an undue hardship on the company**." (emphasis in original).

23.     Mr. Spearing also expressed a firm intention to continue to violate the ADA and FMLA: "Therefore, this company has been consistent in adhering to the policy of no part time sales people [dic] to ensure the success of our full time employees and the company itself. . .  I can attest to the fact that we have not employed a part time sales person [sic] nor have we changed our pay plan for over 20 years and have no future plans of changing our hiring positions. I submit that these policies ward off potential disruptions that would pose an undue hardship to the company."

24.     On many occasions, Adams informed Mr. Spearing that she was experiencing extreme financial difficulties and that the stress from her inability to make a living was making it more difficult for her to heal physically.

25.     Another manager informed Adams that another sales associate needed her desk and that the company had stored her belongings, implying that she had already been replaced while on approved FMLA leave.

26.     On December 9, 2019, Mr. Speaking texted Adams to check on her and asked, "Is there anything I can do to assist? Please let me know. We are ready for your return when you are ready."

27.     Adams responded, "Honestly what I needed was when my doctor said I could work part time while I was healing and it was still in the months people were still coming in I needed to work. Even if it was part time I could have had a chance to make some kind of income to help me out. Now I am only getting 230.00 (in disability payments) a week to pay all my bills including medical insurance. It put me in a very bad situation. I have no income to now to speak of so paying bills, Christmas, getting b[y] now are none existing. If my room mate was not a meat manager I would be eating top ramen every night. If I could have worked my part time while under disability. It could have pa[i]d my medical and some bills. It may not have been as high as I was doing before at first however anything would have helped."

28.     Mr. Spearing responded only with, "Oh my. You know how hard [working part-time] is in sales."

29.     Adams responded, "You told me at the beginning let you know if there was anything I needed big or small. I needed some[thing] small to work what I could under doctor's approval part time to start. I do not understand what you meant by big or small because it was small. I just needed some help."

30.     Finally, on January 7, 2020, Adams's physician informed her that she would be cleared to work fulltime beginning February 1, 2020. When Adams received the written documentation on January 13, she texted a copy of the note to Mr. Spearing. The release states that there "are no restrictions on the work she can perform; however, she has a neurological problem that impacts her ability to walk for prolonged periods of time and for longer distances. Please

accommodate her work by assigning her tasks that do not involve a lot of walking and please accommodate her by providing her a chair whenever needed. There are no restrictions from a medical perspective if she feels comfortable driving her golf cart at work."

31.    In response, Mr. Spearing responded, "Ok. How do you feel about steps and stairs? As you know, we have plenty." Ms. Adams responded, "I can do them I just have to go slow."

32.    On January 14, Adams visited Crestview RV to organize her supplies and documents in anticipation of beginning work again on February 1. Mr. Spearing asked to meet with her and stressed that Crestview RV was worried about her ability to walk up the numerous uneven steps and stairs at the job site.

33.    Adams responded that she would be fine with the steps and stairs as long as she walked slowly.

34.    Mr. Spearing also stated that he was worried about Adams working in the heat, asking repeatedly whether her physician really knew what her work entails.

35.    Adams responded that she had been completely honest and forthright with her physician about her job duties, and that Adams would be able to perform all necessary job duties by taking occasional breaks from the heat and by climbing and descending the stairs carefully.

36.    On January 15, 2020, Adams, through counsel, sent correspondence to Crestview RV notifying them of their non-compliance with the Family and Medical Leave Act and the Americans with Disabilities Act. Counsel informed Crestview RV that Adams would be returning to work on February 1, 2020 and that she hoped it would go smoothly.

37.    After receiving the letter from Adams's counsel, Crestview RV and ADP TotalSource permitted her to return to work on February 1, 2020, but for several weeks after her return she received snide and mean comments regarding the way that Adams walked now

following her hospitalization. Mr. Spearing appeared to purposefully schedule mandatory training and events outside of Adams's normal working hours, so instead of working approximately 40 hours a week she was working 50-60 hours per week and her health was suffering. Mr. Spearing also pressured her not to sit down when needed, as ordered by her doctor. Adams believed that Crestview RV and Mr. Spearing were trying to get her to quit by using her disability against her.

38.    Crestview RV only agreed to reduce Adams's hours to 40 per week and to allow her to sit when needed after she spent $400 out of her own pocket to get a specialist referral reiterating her needed accommodations.

39.    During the COVID-19 health crisis in Spring 2020, Crestview RV put Adams and other sales associates on furlough.

40.    In May or June 2020, Crestview RV began calling sales associates and asking them to return to work. However, Crestview RV did not contact Adams.

41.    Adams did not hear anything from Crestview RV until approximately June 19, 2020, when Spearing learned that Adams was aware the other sales associates had already returned. Adams informed Spearing that she was interested in coming back, and Spearing responded, "Ok. Let me weigh things out and we can chat Monday."

42.    On Monday, June 22, 2020, Adams met with Spearing and with Human Resources. He referenced Adams's EEOC Charge of Discrimination repeatedly, as well as the fact that Adams had hired counsel to represent her in securing her rights under the FMLA and ADA.

43.    Speaking told Adams, "We haven't gotten a lawyer since we didn't do anything wrong. But are you comfortable coming back?" Adams confirmed that she just wanted to do her job.

44.     Spearing told Adams, "Well I don't know if legally I have to bring people back. This is a right to work employment state. I don't know if legally I have to let you back."

45.     Spearing never contacted Adams to return, instead claiming that Crestview RV did not have the necessary inventory to allow her to return. However, based on information and belief, Spearing and Crestview RV refused to permit Adams to return because she had exercised her rights under the ADA and FMLA.

### E. Count 1—Disability Discrimination under the ADA and TCHRA (Against Crestview RV Defendants)

46.     Plaintiff incorporates by reference all of the allegations made above.

47.     Plaintiff is disabled, as defined by the ADA and TCHRA. Specifically, Plaintiff has a medical condition that substantially limits one or more major life activities. Plaintiff is qualified to perform the essential functions her position with or without accommodations.

48.     Plaintiff is an employee within the meaning of the ADA and TCHRA.

49.     Defendant violated the ADA and TCHRA by intentionally discriminating against Plaintiff because of her disability or perceived disability. Defendant's discriminatory acts include refusing to permit her to return to work on a parttime basis, failing to accommodate her medical restrictions following her return to work on February 1, 2020, and excluding her from returning from furlough in May 2020.

50.     Although Plaintiff requested numerous accommodations, Defendant refused to make them and refused to engage in the required interactive process.

### F. Count 2 – FMLA Interference (Against All Defendants)

51.     Plaintiff incorporates by reference all of the allegations made above.

PLAINTIFF'S ORIGINAL COMPLAINT                                                                    9

52.     Plaintiff is an eligible employee within the meaning of the FMLA. Plaintiff was employed by Defendants for at least 12 months and for at least 1,250 hours of service during the previous 12-month period. *See* 29 U.S.C. §2611(2).

53.     Plaintiff was entitled to 12 workweeks of leave per leave year because she suffered from a serious health condition.

54.     Plaintiff gave her employers practicable notice when the leave was needed.

55.     Plaintiff provided all necessary information related to her serious health condition.

56.     It is unlawful for an employer to interfere with, restrain, or deny the exercise of any right provided by the FMLA. 29 U.S.C. §2615(a)(1). FMLA rights include requesting or taking leave under the FMLA and once leave is completed, being restored by the employer to the position of employment the employee held when leave commenced, or to an equivalent position of employment with equivalent employment benefits, pay, or other terms and conditions of employment. 29 U.S.C. §2612(a)(1); 29 U.S.C. §2614(a)(1); 29 U.S.C. §2614(c)(1).

57.     Defendants intentionally interfered with and/or denied Plaintiff's exercise of rights provided under the FMLA by: (a) refusing to permit Plaintiff to take intermittent leave as certified by her physician; (b) failing to restore her to the position of employment she held when leave commenced, or to an equivalent position of employment with equivalent benefits, pay or other term and conditions of employment; (c) by using her FMLA-protected absences as a basis for Defendants' decision to terminate her; and (d) ending her health insurance benefits during what lawfully should have been the remainder of her leave had she been permitted to return parttime.

58.     In denying Plaintiff her rights under the FMLA, Defendants acted willfully and in bad faith.

PLAINTIFF'S ORIGINAL COMPLAINT                                                    10

### G. Count 3 – FMLA Retaliation (Against All Defendants)

59.     Plaintiff incorporates by reference all of the allegations made above.

60.     Plaintiff is an eligible employee within the meaning of the FMLA. Plaintiff was employed by Defendants for at least 12 months and for at least 1,250 hours of service during the previous 12-month period. See 29 U.S.C. §2611(2).

61.     Plaintiff was entitled to 12 workweeks of leave per leave year because she suffered from a serious health condition.

62.     Plaintiff gave her employers practicable notice when the leave was needed.

63.     Plaintiff provided all necessary information related to her serious health condition.

64.     It is unlawful for an employer to discriminate or retaliate against an employee for engaging in FMLA-protected activity. 29 U.S.C. §2615(a)(1 and 2).

65.     Plaintiff engaged in FMLA-protected activity by requesting leave; taking leave; and asserting her rights under the FMLA, including informing her employers that she would need an FMLA-qualifying leave of absence. Defendants discriminated and/or retaliated against Plaintiff for engaging in FMLA-protected activity. Specifically, Defendants terminated Plaintiff in retaliation for her engaging in FMLA-protected conduct and for Plaintiff engaging in FMLA-protected leave.

66.     In denying Plaintiff her rights under the FMLA, Defendants acted willfully and in bad faith.

### H. Prayer for Relief

67.     Plaintiff respectfully requests and demands judgment against Defendants for the following:

(a)     Actual, consequential, and compensatory damages;

(b)    Exemplary and punitive damages;

(c)    Equitable relief, including, but not limited to front pay;

(d)    Liquidated damages;

(e)    Pre-judgment interest if, as, and when allowed by law;

(f)    Reasonable and necessary attorney's fees;

(g)    Costs of court;

(h)    Post-judgment interest; and

(i)    Any other relief to which Plaintiff may be entitled, whether in law or equity.

### I. Jury Demand

68.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues.

Respectfully submitted,

**THE MORALES FIRM, P.C.**
6243 W. Interstate 10, Suite 132
San Antonio, Texas 78201
Telephone: (210) 225-0811
Facsimile: (210) 225-0821

BY: /S/ Allison Sarah Hartry
Lawrence Morales II
State Bar No. 24051077
Email: lawrence@themoralesfirm.com
Allison Sarah Hartry
State Bar No. 24083149
Email: ahartry@themoralesfirm.com

PLAINTIFF'S ORIGINAL COMPLAINT